IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

EQUITY FUNDING, LLC,    )
            )
    Plaintiff,    )
            )
v.           )   Case No. CIV-21-00042-JWD
            )
VANESSA C. McNEILL,   )
            )
    Defendant.   )

## ORDER

Before the Court is Plaintiff Equity Funding, LLC's First Motion to Strike and to Dismiss ("Motion"). [Doc. No. 36]. Plaintiff Equity Funding, LLC ("Equity Funding") moves under Federal Rule of Civil Procedure 12(f) to strike Defendant Vanessa C. McNeill's Answer in its entirety on the basis that it asserts scandalous and immaterial matter and moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Ms. McNeill's counterclaims for failure to state a claim. Motion at 1, 2, and 5. Additionally, Equity Funding asks the Court to impose monetary sanctions to compensate it for filing the Motion. *See id.* at 5. Ms. McNeill filed a response in opposition. [Doc. No. 39]. For the reasons stated below, the Court denies the Motion.

## I. BACKGROUND

Equity Funding, d/b/a Wilson Nursing Center ("Center"), filed this action against Ms. McNeill, a former employee of the Center. The First Amended Complaint ("FAC") [Doc. No. 10] alleges federal question claims against Ms. McNeill for violations of the Computer Fraud and Abuse Act and for misappropriation of trade secrets under the

Defend Trade Secrets Act. FAC at 2, 7–10. It also alleges breach of fiduciary duties. *Id.* at 9–10. At its beginning, the FAC provides an overview of Ms. McNeill's alleged misconduct while employed at the Center and asserts that Ms. McNeill capitalized "on the unique challenges posed by the" Covid-19 pandemic "and her long and trusted relationship with the octogenarian owners." *See id.* at 1–2.

Ms. McNeill filed an Answer and Counterclaim [Doc. Nos. 31–32]. Before responding to the numbered allegations in the FAC, Ms. McNeill, in the same summary fashion as Equity Funding, denied the allegations in Equity Funding's unnumbered "SUMMARY" section with a narrative of her own. *See id.* at 1–5. This summary or narrative appears to be the true focus of Equity Funding's Motion, and Equity Funding asserts that the narrative includes matters that are immaterial and scandalous under Rule 12(f). Ms. McNeill asserts that the narrative is her "perspective of the case" and is necessary "to develop facts that support her counterclaims" and to provide "sufficient detail to plead tortious interference with contract and slander," including Equity Funding's motive, whether its conduct was improper and unfair, and the relationship among the actors in the case. [Doc. No. 39 at 1–3].

To summarize, Ms. McNeill alleges that the owners of the Center are her ex-in-laws and that her ex-husband was also employed at the Center as the Director of Operations. [Doc. No. 31 at 1–2]. Additionally, Ms. McNeill alleges that she and her ex-husband were experiencing marital problems that led to tension at home and at work during the time frame alleged in the FAC. *See id.* at 2–3. She further asserts that there were rumors permeating throughout the Center that her ex-husband was involved with the

2

Director of Nursing, and that this contributed to the tension at work and at home. *See id.* at 3.

Ms. McNeill, who had worked on and off at the Center from 2011 through 2020, was promoted to Administrator on April 2, 2020.[1] *See id.* at 2–3. Two weeks after her promotion, she was demoted to assistant to the Director of Nursing. *Id.* at 3. Present at the meeting where Ms. McNeill learned of her demotion was her ex-husband, her ex-mother-in-law, Harry Jones (Equity Funding's attorney), and the Director of Nursing.[2] [Doc. No. 31 at 3].

Following her resignation from the Center, Ms. McNeill secured employment at Pauls Valley Care Center ("PVCC"), a nursing home in Pauls Valley, Oklahoma, in May 2020. *See id.* at 4. In addition to finding new employment, Ms. McNeill had filed for divorce and was seeking sole custody of her children. *See id.* She alleges that in September 2020, shortly after a temporary order was entered granting her custody of the children, Mr. Jones came to the PVCC and began questioning employees there about Ms. McNeill's ongoing divorce. *See id.* Additionally, Ms. McNeill alleges that Mr. Jones

---

[1] Ms. McNeill alleges that at that time she was licensed by the Oklahoma Department of Health to work as an administrator of a nursing home. *See id.* at 1–2. She further asserts that prior to her promotion, her ex-husband was "essentially work[ing] as the administrator for his mother," but since he was not licensed, "certain obligations were not met." *See id.* at 2.

[2] Ms. McNeill identifies the Director of Nursing by name in her Answer, and Equity Funding takes issue with the identification of this third party by name, asserts that the non-party has no relevance to the facts of this case, and asks that the name be stricken. *See* Motion at 6; *see also* [Doc. No. 31 at 3]. The Court declines to grant this request, however, under the legal standards noted below.

3

questioned "her mental state" and "made slanderous statements concerning [Ms. McNeill]." *See id.* After his visit, Ms. McNeill's employment with PVCC was terminated. *See id.* at 5.

Ms. McNeill alleges that Mr. Jones is "a longtime friend of [her ex-husband's]," and that Ms. McNeill and Mr. Jones "engaged in an affair in the early years of [Ms. McNeill's] marriage." *See id.* She further alleges that "Mr. Jones is aware of the intense embarrassment and emotion he evokes from [Ms. McNeill]," that it was "not a coincidence that he was at the [demotion] meeting," and that he has interfered with her "efforts to move on from her job at the [Center] and her failed marriage." *See id.*

Ms. McNeill alleges two state-law counterclaims under Oklahoma law: tortious interference with a contractual relationship and slander. Specifically, she alleges that she was employed as an administrator with PVCC from May 2020 to September 14, 2020, and that she had an employment contract with PVCC. *See id.* ¶¶ 29, 34. Ms. McNeill alleges that Equity Funding, who was aware of this contractual relationship, intentionally and unjustifiably interfered with the employment contract. *Id.* ¶¶ 35–36. Ms. McNeill alleges she was damaged by Equity Funding's actions and seeks lost pay, other actual damages, and punitive damages. *Id.* ¶ 37.

She further alleges that sometime during the week of September 7, 2020, Mr. Jones, on Equity Funding's behalf, came to PVCC and "made several untruthful statements" about Ms. McNeill that pertained "to her fitness to perform the job as administrator and . . . her mental state." *Id.* ¶¶ 30–31. Additionally, she alleges "on information and belief" that Mr. Jones threatened PVCC with a lawsuit if it refused to

terminate Ms. McNeill's employment. *Id.* ¶ 32. Ms. McNeill asserts that Mr. Jones took these actions on behalf of Equity Funding with the intent to interfere with Ms. McNeill's employment and without regard to the truth of the matters asserted. *See id.* ¶ 33.

With respect to her slander claim, Ms. McNeill alleges that Equity Funding made false and unprivileged statements that directly injured Ms. McNeill's profession, trade, or business. *Id.* ¶ 38. She alleges that Mr. Jones, again on Equity Funding's behalf, stated that she was "unfit mentally to perform her job duties, was unfit to perform the job duties as an administrator, and falsely accused her of a crime." *Id.* ¶ 39. Ms. McNeill alleges that she suffered damages from Equity Funding's actions and seeks lost pay, other actual damages, and punitive damages. *Id.* ¶ 40.

## II.   STANDARD OF REVIEW

### A.   Legal Standard for Motion to Strike under Rule 12(f)

A district court is authorized under Federal Rule of Civil Procedure 12(f) to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may act "on its own" or on a party's motion. *See id.* "The intent of Rule 12(f) is to 'minimize delay, prejudice, and confusion'" early in the litigation. *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1259 (D. Kan. 2011) (quoting *Resol. Tr. Corp. v. Fleischer*, 835 F. Supp. 1318, 1320 (D. Kan. 1993)). However, striking allegations is a "drastic remedy," and motions to strike "are disfavored." *Id.* at 1259, 1257. The movant faces a "'demanding burden,'" and any doubts are resolved in the nonmovant's favor. *United States ex rel. Schroeder v. Medtronic, Inc.*, Case No. 17-2060-DDC-BGS, 2024 WL 1095664, at *3 (D. Kan. Mar. 13, 2024) (quoting *John*

*Michael Assocs., Inc. v. BlueStem Mgmt. Advisors LLC*, Case No. 22-2055-HLT-RES, 2022 WL 1184447, at *2 (D. Kan. Apr. 21, 2022)).

Courts generally "decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party." *Falley*, 787 F. Supp. 2d at 1257 (internal quotation marks and citation omitted); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. Feb. 2024 update) (noting that such motions are often considered "time wasters" and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action") (footnotes omitted). District courts possess "considerable discretion in disposing of a Rule 12(f) motion to strike." 5C Wright & Miller, § 1382; *see also MacIntyre v. JP Morgan Chase Bank, N.A.*, 827 F. App'x 812, 816 (10th Cir. 2020) (unpublished) (reviewing district court's denial of motion to strike for abuse of discretion) (citing *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015)).

**B.      Legal Standard for Motion to Dismiss under Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss a counterclaim is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss a claim. *See Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003); *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1265 (D. Kan. 2019). To survive a motion to dismiss under Rule 12(b)(6), a counterclaim must contain "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550

6

U.S. 544, 570 (2007). "A [counterclaim] has facial plausibility when the [counter claimant] pleads factual content that allows the court to draw the reasonable inference that the [counter defendant] is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed factual assertions are not necessary, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a [counter defendant's] liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the counter claimant to plead factual allegations that "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a counter claimant establish a prima facie case in the pleading, but the elements of each cause of action help to determine whether the counter claimant has set forth a plausible counterclaim. *See id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the [counterclaim] alone is legally sufficient to state a claim for which relief may be granted." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

III.    **DISCUSSION**

A matter is immaterial when it "has no essential or important relationship to the claim for relief, or [it is] a statement of unnecessary particulars in connection with that which is material." *Kaufman v. Cent. RV, Inc.*, Case No. 21-2007-SAC-ADM, 2021 WL 809293, at *2 (D. Kan. Mar. 3, 2021) (internal quotation marks and citation omitted). "Courts in [the Tenth Circuit] treat this as a relevance inquiry." *Jenkins v. City of Las Vegas*, 333 F.R.D. 544, 548 (D.N.M. 2019). Scandalous matter is material that "improperly casts a derogatory light on someone, most typically on a party to the action." 5C Wright & Miller, *supra*, § 1382 (footnote omitted); *Jenkins*, 333 F.R.D. at 548 (same). However, "to be scandalous, a statement must go beyond 'offend[ing] the sensibilities of the objecting party *if* the challenged allegations describe acts or events that are relevant to the action.'" *Jenkins*, 333 F.R.D. at 548 (quoting *Sundance Servs., Inc. v. Roach*, Civ. No. 10-110 JP/CEG, 2011 WL 13285462, at *2 (D.N.M. June 2, 2011)) (emphasis in *Jenkins*). Consequently, "courts have permitted allegations to remain in the pleadings when they [are] supported and were relevant to a claim for punitive damages." 5C Wright & Miller, *supra*, § 1382 (footnote omitted); *see also Kaufman*, 2021 WL 809293, at *3 (finding allegations therein were relevant to the plaintiff's claim for punitive damages and bore on the defendant's alleged pattern of conduct and intent).

"Courts have described scandalous material to be that which is irrelevant and degrades [a party's] moral character, contains repulsive language, or detracts from the dignity of the court." *Kirby v. Broken Skull Trucking Inc.*, Case No. 21-1238-JWB-GEB, 2022 WL 392298, at *3 (D. Kan. Feb. 9, 2022) (internal brackets, quotation marks, and

8

citation omitted). Courts differentiate scandalous material from information that is
"unflattering" or "shed[s] a negative light" on a party. *See id.* at *2, 5. If the unflattering
or negative information "does not rise to the level of degrading any [party's] moral
character," it is not scandalous under Rule 12(f). *See id.* at *5 (although allegations
pertaining to a defendant's criminal history "may shed a negative light," the court
concluded "such negativity is all too common in litigation, but does not rise to the level
of degrading any [d]efendant's moral character"). Some courts also place an emphasis on
whether the relevant allegations "go into unnecessary detail." *See Begay v. Pub. Serv. Co.
of N.M.*, 710 F. Supp. 2d 1161, 1185 (D.N.M. 2010); *Suman v. Geneva Roth Ventures,
Inc.*, Case No. 08-2585-JWL, 2009 WL 10707504, at *1 (D. Kan. Feb. 9, 2009); *Dean v.
Gillette*, No. Civ.A.04-2100JWL-DJW, 2004 WL 3202867, at *1 (D. Kan. June 8, 2004).

Ms. McNeill asserts that the challenged material is relevant to her counterclaims,
and it does not "degrade the moral character of any party involved, contain repulsive
language, or detract from the dignity of the court." [Doc. No. 39 at 4]. Under Oklahoma
law, a tortious interference claim has four elements: "(1) the interference was with an
existing contractual or business right; (2) such interference was malicious and wrongful;
(3) the interference was neither justified, privileged, nor excusable; and (4) the
interference proximately caused damage." *Wilspec Techs., Inc. v. DunAn Holding Grp.*,
204 P.3d 69, 74 (Okla. 2009) (citing *Mac Adjustment, Inc. v. Prop. Loss Rsch. Bureau*,
595 P.2d 427, 428 (Okla. 1979)). Oklahoma Uniform Jury Instruction-Civil ("OUJI") No.
24.1 sets forth the elements as follows:

[Plaintiff] claims that [he/she/it] had a contract with [Third Party] in which they had agreed to [Describe the terms of the contract]. [Plaintiff] also claims that [Defendant] intentionally and wrongfully interfered with this contract, and that [he/she/it] suffered damages as a direct result. In order to win on the claim of intentional interference with a contract, [Plaintiff] must show by the weight of the evidence that:

1.    [Plaintiff] had a contract with [Third Party];

2.    [Defendant] knew [or under the circumstances reasonably should have known] about the contract;

3.    [Defendant] interfered with the contract [or induced the Third Party to breach the contract, or made it impossible for the contract to be performed];

4.    [Defendant]'s conduct was intentional;

5.    [Defendant] used improper or unfair means; and

6.    [Plaintiff] suffered damages as a direct result of [Defendant]'s actions.

*See* OUJI No. 24.1. OUJI No. 24.3 defines improper or unfair means to include the balancing of several factors:

1.    The nature of the defendant's conduct;

2.    The defendant's motive;

3.    The interests of the plaintiff with which the defendant's conduct interfered;

4.    The interests sought to be advanced by the defendant;

5.    The social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

6.    The proximity or remoteness of the defendant's conduct to the interference claimed by the plaintiff; and

10

>    7.    The relationship among the plaintiff, [name of breaching party], and
>          the defendant.

*See* OUJI No. 24.3. Additionally, a plaintiff seeking punitive damages for tortious

interference "must prove that the defendant acted either recklessly, intentionally, or

maliciously by clear and convincing evidence." *Wilspec Techs., Inc.*, 204 P.3d at 75

(citing Okla. Stat. tit. 23, § 9.1).

The challenged material aligns with Ms. McNeill's theory of liability under her

tortious interference counterclaim and is relevant to Equity Funding's intent and motive

and the factors identified in OUJI No. 24-3 involving improper or unfair means.

Although Ms. McNeill is not required to establish a prima facie case in her pleading, the

elements of her tortious interference claim serve as a guide to evaluate whether she has

pled enough facts to state a plausible claim. *See Khalik v. United Air Lines*, 671 F.3d

1188, 1192 (10th Cir. 2012). Thus, Ms. McNeill must plead sufficient facts to survive

dismissal under Rule 12(b)(6), and this includes alleging what actions Equity Funding

took to interfere with the contract, whether its conduct was intentional, and whether it

involved improper or unfair means. Additionally, to support her request for punitive

damages, Ms. McNeill must allege sufficient facts to support a finding that Equity

Funding's alleged interference was reckless, intentional, or malicious.

Here, Ms. McNeill's allegations surrounding the marital tension at home and at

work and the circumstances of her demotion to assistant to the Director of Nursing

coupled with the relationships of the parties involved go to the center of her tortious

interference claim. Moreover, Ms. McNeill does not go into unnecessary detail about the

alleged affair, the marital tension, or her demotion. Nor does her pleading include repulsive language or detract from the dignity of the court. Thus, the material is not scandalous or immaterial under Rule 12(f).[3]

Additionally, Ms. McNeill has alleged sufficient facts at this stage to state plausible counterclaims for tortious interference and slander. With respect to tortious interference, Ms. McNeill alleges that she had an employment contract with PVCC, and that Equity Funding knew about the contract. She alleges that Mr. Jones, on Equity Funding's behalf, interfered with the contract by making statements to her new employer that Ms. McNeill was not fit to perform the job. Moreover, Ms. McNeill has provided facts to support her allegations that Mr. Jones' conduct, on Equity Funding's behalf, was intentional and that he used improper or unfair means. Finally, Ms. McNeill alleges that she sustained damages because of Mr. Jones' and Equity Funding's actions.

Under Oklahoma law, slander "'is a false and unprivileged publication, other than libel, which . . . [t]ends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit.'"

---

[3] In declining to strike the disputed allegations, the Court notes it is not ruling on their later admissibility. A motion to strike is "an inappropriate forum to prematurely determine the admissibility of evidence." *Kirby*, 2022 WL 392298, at *5 (citing *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, Case No. 6:08-cv-01405-JTM, 2017 WL 1048365, at *2 (D. Kan. Mar. 20, 2017) (explaining that Rule 12(f) "is not designed to allow parties to obtain advance rulings on the admissibility of evidence")); *Kaufman*, 2021 WL 809293, at *3 (noting that "the court is not ruling on admissibility at this stage").

*Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1552 (10th Cir. 1995) (quoting Okla. Stat. tit. 12, § 1442(3)).

Here, Ms. McNeill alleges that Mr. Jones, on Equity Funding's behalf, made false statements to PVCC about her ability to perform her job as administrator and her mental state, resulting in PVCC terminating her employment. Consequently, Ms. McNeill asserts that she suffered damages from Equity Funding's actions in the form of lost pay, other actual damages, and punitive damages. This is sufficient to state a claim.

## IV.   **CONCLUSION**

Based on its analysis above, the Court DENIES Plaintiff Equity Funding, LLC's First Motion to Strike and to Dismiss [Doc. No. 36].

IT IS SO ORDERED this 20th day of May 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE